1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JASSY VICK CAROLAN LLP**
KEVIN L. VICK, Cal. Bar No. 220738
  kvick@jassyvick.com
JEAN-PAUL JASSY, Cal. Bar No. 205513
  jpjassy@jassyvick.com
800 Wilshire Boulevard, Suite 800
Los Angeles, California 90017
Telephone:   310-870-7048
Facsimile:   310-870-7010

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

GIRIBALA PATEL and SAJAN PATEL,

                    Plaintiffs,

          vs.

CITIBANK CORPORATION, a New York Corporation; BANK OF AMERICA, a North Carolina Corporation; JP MORGAN CHASE & CORPORATION, New York Corporation; REGIONS FINANCIAL CORPORATION, an Alabama Corporation; APPLE, INC., a California Corporation; GOOGLE, LLC, a California Limited Liability Company; FEDEX CORPORATION, a Tennessee Corporation; LYNDA KATHLYN COMADURAN, an Individual; SUBHANKAR BOSE, an Individual; and DOES 1 through 100, inclusive,

                    Defendants.

Case No. 8:19-CV-01539-DOC-KES

Honorable David O. Carter

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**[Declaration of Kevin L. Vick in Support of Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Exhibit 1 filed concurrently; [Proposed] Order lodged concurrently]**

Date:          September 30, 2019
Time:          8:30 a.m.
Courtroom:  9D

1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 30, 2019, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9D of the above-entitled Court, the Honorable David O. Carter, presiding, Defendant Google LLC ("Google") will and hereby does move the Court under the Federal Rules of Civil Procedure, Rule 12(b)(6), for an order dismissing the Complaint of Plaintiffs Giribala Patel and Sajan Patel and each claim for relief contained therein against Google.

A conference of counsel pursuant to Local Rule 7-3 took place on August 9, 2019.  *See* concurrently-filed Declaration of Kevin L. Vick ("Vick Decl.") ¶¶ 2-3, Ex. 1.

Google's Motion to Dismiss is made on the following grounds:

(1)   Plaintiffs' second claim for relief, for professional negligence, fails to state a claim upon which relief can be granted against Google for the following independent reasons:

   a.  The Complaint fails to allege a valid basis for the existence of any cognizable legal duty owed by Google to Plaintiffs and, as a matter of law, Google did not owe Plaintiffs any cognizable legal duty under the circumstances that could support a claim for professional negligence;

   b.  the Complaint fails to allege a valid basis demonstrating that Google actually or proximately caused Plaintiffs' claimed damages, as opposed to the intervening criminal third party acts of others; and

   c.  the economic loss doctrine bars Plaintiffs' claim against Google.

(2)   Plaintiffs' third claim for relief, for breach of fiduciary duty, fails to state a claim upon which relief can be granted against Google for the following independent reasons:

   a.  The Complaint fails to allege a valid basis for the existence of any fiduciary duties owed by Google to Plaintiffs and, as a matter of law,

1    Google did not owe Plaintiffs any fiduciary duties under the

2    circumstances that could support a claim for breach of fiduciary duty;

3    b.  the Complaint fails to allege a valid basis demonstrating that Google

4    actually or proximately caused Plaintiffs' claimed damages, as

5    opposed to the intervening criminal third party acts of others; and

6    c.  the economic loss doctrine bars Plaintiffs' claim against Google.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Kevin L. Vick and Exhibit 1, on all papers, pleadings, records and files in this case, on all matters of which judicial notice may be taken, and on such other evidence and/or argument as may be presented to the Court at the hearing on this Motion.

Google respectfully requests that the Court dismiss the Complaint, and each claim for relief contained therein against Google, with prejudice and without leave to amend.

Dated:  August 23, 2019          JASSY VICK CAROLAN LLP

By:   */s/ Kevin L. Vick*
Kevin L. Vick

Attorneys for Defendant
GOOGLE LLC

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   PERTINENT FACTUAL ALLEGATIONS IN COMPLAINT ..................... 2

III.  STANDARD ON RULE 12(b)(6) MOTION TO DISMISS ........................ 3

IV.   PLAINTIFFS' PROFESSIONAL NEGLIGENCE CLAIM AGAINST
      GOOGLE FAILS AS A MATTER OF LAW .......................................... 4

      A.    Plaintiffs Fail To Allege A Valid Basis For The Existence Of A
            Cognizable Legal Duty Owed To Them By Google ......................... 4

            1.    Plaintiffs' Claims Are Based on Google's Alleged Nonfeasance 5

            2.    Plaintiffs' Claim Fails Because They Fail To Allege A Special
                  Relationship Creating A Duty Owed To Them By Google .......... 7

            3.    The *Rowland* Factors Further Underscore That Google Does
                  Not Owe Plaintiffs A Cognizable Legal Duty ............................ 8

      B.    Plaintiffs Fail To Plausibly Allege That Google Actually Or
            Proximately Caused Their Claimed Damages ................................ 11

      C.    The Economic Loss Doctrine Further Bars Plaintiffs' Claim ............ 12

V.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM AGAINST
      GOOGLE FAILS AS A MATTER OF LAW ......................................... 13

      A.    Plaintiffs Fail To Allege A Valid Basis For The Existence Of Any
            Cognizable Fiduciary Duties Owed to Them By Google .................. 13

      B.    Plaintiffs' Fiduciary Duty Claim Also Fails Because The Complaint
            Does Not Plausibly Allege Google Actually Or Proximately Caused
            The Claimed Damages And The Economic Loss Doctrine Bars The
            Claim ........................................................................................ 15

VI.   CONCLUSION ................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

CASES

4

5

*Adelman v. Associated International Insurance Co.,*
    90 Cal. App. 4th 352 (2001)................................................................4

6

*Angelis v. Foster,*
    24 Cal. App. 2d 541 (1938)..........................................................11, 12

7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................3, 4, 11

8

9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................3, 4

10

*Bojorquez v. House of Toys, Inc.,*
    62 Cal. App. 3d 930 (1976)................................................................5

11

12

*Burns v. Neiman Marcus Grp., Inc.,*
    173 Cal. App. 4th 479 (2009).....................................................4, 5, 7

13

*Carlsen v. Koivumaki,*
    227 Cal. App. 4th 879 (2014)............................................................7

14

15

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
    43 Cal. 4th 375 (2008)......................................................................14

16

17

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal.3d 197 (1983)........................................................................14

18

*Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.,*
    235 Cal. App. 4th 1214 (2015)..........................................................8

19

20

*Cty. of Santa Clara v. Atl. Richfield Co.,*
    137 Cal. App. 4th 292 (2006)..........................................................12

21

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ........................................................................12

22

23

*Flowers v. Torrance Mem'l Hosp. Med. Ctr.,*
    8 Cal. 4th 992 (1994)........................................................................4

24

25

*Gaylor v. Morin,*
    2018 WL 6133405 (C.D. Cal. Jan. 3, 2018) .....................................7

26

*Gilman v. Dalby,*
    176 Cal. App. 4th 606 (2009)..........................................................13

27

28

ii

*Glenn K. Jackson Inc. v. Roe*,
    273 F.3d 1192 (9th Cir. 2001) ........................................................................ 4

*Hall v. Superior Court*,
    108 Cal. App. 4th 706 (2003) ...................................................................... 13

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ................................................ 12

*King v. United States*,
    756 F. Supp. 1357 (E.D. Cal. 1990) ....................................................... 11, 12

*Kirschner Bros. Oil, Inc. v. Natomas Co.*,
    185 Cal. App. 3d 784 (1986) ...................................................................... 13

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ........................................................................ 3

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ...................................................................... 4

*Marshall v. Galvanoni*,
    2017 WL 5177764 (E.D. Cal. Nov. 8, 2017) ............................................. 14

*McMahon v. Pier 39 Ltd. P'ship*,
    2003 WL 22939233 (N.D. Cal. Dec. 5, 2003) ............................................ 7

*McMillan v. Connected Corp.*,
    2011 WL 13213945 (C.D. Cal. May 18, 2011) .......................................... 13

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) ...................................................... 5, 6, 7, 8, 9, 10

*Nally v. Grace Community Church*,
    47 Cal.3d 278 (1988) ................................................................................... 5

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ...................................................................... 2

*Patrick v. Alacer Corp.*,
    167 Cal. App. 4th 995 (2008) ..................................................................... 11

*Pegasus Holdings v. Veterinary Centers of Am., Inc.*,
    38 F. Supp. 2d 1158 (C.D. Cal. 1998) .......................................................... 3

*Premo v. Grigg*,
    237 Cal. App. 2d 192 (1965) ...................................................................... 12

*Quelimane Co. v. Stewart Title Guaranty Co.*,
    19 Cal.4th 26 (1998) .................................................................................. 12

iii

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ............................................................................... 3

*Rowland v. Christian*,
  69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) ..................... 8, 9, 10, 11

*S. California Gas Leak Cases*,
  7 Cal. 5th 391 (2019) .............................................................................. 12, 13

*Sakiyama v. AMF Bowling Centers, Inc.*,
  110 Cal. App. 4th 398 (2003) ............................................................................ 6

*Schauer v. Mandarin Gems of Cal., Inc.*,
  125 Cal. App. 4th 949 (2005) .......................................................................... 14

*Smith v. Freund*,
  192 Cal. App. 4th 466 (2011) ............................................................................ 7

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................. 2

*Thompson v. Cty. of Alameda*,
  27 Cal. 3d 741 (1980) ..................................................................................... 10

*Thompson v. Illinois Dep't of Prof'l Regulation*,
  300 F.3d 750 (7th Cir. 2002) ............................................................................. 3

*In re VeriFone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) .............................................................................. 3

*Williams v. State of California*,
  34 Cal.3d 18 (1983) .......................................................................................... 7

*Wolf v. Superior Court*,
  107 Cal.App.4th 25 (2003) .............................................................................. 14

FEDERAL RULES

F.R.C.P. 12(b)(6) ............................................................................................. 2, 3

OTHER AUTHORITIES

6 Witkin, Summary 11th Torts § 1177 (2019) ..................................................... 7

GOOGLE'S 12(b)(6) MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs allege that they were defrauded by Defendants Subhankar Bose and Lynda Kathyln Comaduran and others ("the Fraudulent Actors") and lost hundreds of thousands of dollars as a result.  However, Plaintiffs have sued not just the Fraudulent Actors, but numerous third parties not associated with them.  Defendant Google LLC is one of those third parties.  Google's only connection to the Fraudulent Actors' scheme is that the Fraudulent Actors allegedly instructed Plaintiff Giribala Patel to purchase $10,000 in Google Play gift cards from various supermarkets and convenience stores and then share them with the Fraudulent Actors.  Despite that tangential connection, Plaintiffs have sued Google for professional negligence and breach of fiduciary duty, claiming Google "failed to protect" them from the Fraudulent Actors.

Plaintiffs' claims fail as a matter of law because Google did not owe Plaintiffs any legal duty that could support their negligence or fiduciary duty claims.  During the parties' meet-and-confer process preceding this Motion, Google's counsel asked Plaintiffs' counsel to provide legal authority supporting the existence of legal duties owed by a party in Google's position.  Plaintiffs' counsel could not provide any such authority.  Moreover, the governing case law discussed in more detail below makes clear that courts consistently reject the existence of such duties in similar cases.  Plaintiffs' claims also fail because the Complaint does not plausibly allege that Google caused Plaintiffs' alleged harm.  Instead, the Complaint shows that Plaintiffs transferred funds to the Fraudulent Actors through numerous means – including cash, wire transfers, and gift cards from vendors other than Google.  There was nothing inherent in Google Play gift cards that caused Plaintiffs' losses.  Rather, the Fraudulent Actors' criminal conduct caused Plaintiffs' harm.  Finally, Plaintiffs' claims are also independently barred by the economic loss doctrine.

Because Plaintiffs' claims against Google fail as a matter of law, Google requests that the Court grant this Motion without leave to amend.

## II.    PERTINENT FACTUAL ALLEGATIONS IN COMPLAINT

Plaintiffs allege that, in December 2018, Plaintiff Giribala Patel was contacted by the Fraudulent Actors as part of a scheme to deceive her and steal her and her husband's assets.  Compl. ¶¶ 19-22.  Plaintiffs claim that over the course of one month, the Fraudulent Actors convinced Girabala Patel to send them: (1) two $23,000 wire transfers; (2) $24,000 in Apple gift cards from an Apple store; (3) $10,000 in Google Play gift cards purchased from Ralph's and Albertson's supermarkets and a 7-Eleven store; (4) five packages with $30,000 in cash in each; and (5) a $140,000 wire transfer.  *Id.* ¶¶ 23-31; *see also* Ex. D to Compl. (receipts for Google Play gift cards from Ralph's, Albertson's and 7-Eleven).

In this action, Plaintiffs have sued not only the Fraudulent Actors who allegedly absconded with their money, but also the bank from which Ms. Patel sent the wire transfers (Bank of America), two financial institutions that received the wire transfers (Regions Financial Corporation and JP Morgan Chase & Corporation), a bank from which Patel withdrew cash that she then sent to the Fraudulent Actors (Citibank), the carrier who delivered the packages containing that cash (Fed Ex), and issuers of gift cards (Apple and Google) that she purchased and then sent to the Fraudulent Actors.

Although the Complaint contains six causes of action, only two are alleged against Google: the second cause of action for professional negligence and the third cause of action for breach of fiduciary duty.  Plaintiffs allege that the stores selling the Google Play gift cards did not have signs or displays warning customers of potential scams.  Compl. ¶ 27.[1]  Plaintiffs allege that Google "owe[s] its customers

---

[1] With respect to Defendant Apple, Plaintiffs further allege that Apple Store employees did not warn her about gift card scams.  Compl. ¶ 27.  No similar plausible allegation is made against Google.  *Id.*  Indeed, an Exhibit attached to the Complaint show that Plaintiff Patel bought the Google Play gift cards at Ralph's, Albertson's

the highest duty of care and diligence in preventing the Fraudulent Actors from stealing" customers' money. *Id.* ¶ 51. Plaintiffs further allege that Google "failed to protect" Plaintiffs "from becoming victim of gift card scams," and "failed to educate and warn" Plaintiffs about the existence of such scams. *Id.* ¶ 52; *see also id.* ¶ 61-62.

## III.  STANDARD ON RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Pegasus Holdings v. Veterinary Centers of Am., Inc.*, 38 F. Supp. 2d 1158, 1159-60 (C.D. Cal. 1998). Although review on a Rule 12(b)(6) motion to dismiss for failure to state a claim is generally limited to the complaint, the Court may consider the contents of exhibits attached to or referenced in the complaint and matters that may be judicially noticed. *Id.* at 1160; *see also* n. 1, *supra.* "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").

A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege sufficient facts "to state a claim to relief that is plausible on its face" and rises "above the speculative level." *Id.* To do so, a plaintiff must plead facts that give rise to "more than a sheer possibility that the defendant has acted unlawfully," and the court must "draw on its judicial

---

and 7-Eleven stores. Compl. Ex. D; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (in ruling on Rule 12(b)(6) motions, courts may consider contents of exhibits attached to the complaint); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)) (courts may disregard a complaint's "allegations that contradict matters" set forth in exhibits attached to the complaint); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (it is a "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*") (original emphasis; internal quotation marks omitted).

1   experience and common sense" in determining whether the complaint states any

2   plausible claims.  *Iqbal*, 556 U.S. at 678-679.

3       Leave to amend should not be granted if the complaint suffers from incurable

4   defects.  *See Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002).

5   **IV.   PLAINTIFFS' PROFESSIONAL NEGLIGENCE CLAIM AGAINST**

6         **GOOGLE FAILS AS A MATTER OF LAW**

7      **A. Plaintiffs Fail To Allege A Valid Basis For The Existence Of A**

8         **Cognizable Legal Duty Owed By Google**

9       "Under California law, '[t]he threshold element of a cause of action for

10   negligence is the existence of a duty to use due care toward an interest of another that

11   enjoys legal protection against unintentional invasion.... Whether this essential

12   prerequisite to a negligence cause of action has been satisfied in a particular case is a

13   question of law.'" *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196–97 (9th Cir.

14   2001) (quoting *Adelman v. Associated International Insurance Co.,* 90 Cal. App. 4th

15   352, 360 (2001)).  It is appropriate for courts to determine the existence of a legal

16   duty at the pleadings stage.  *E.g.*, *Burns v. Neiman Marcus Grp., Inc.*, 173 Cal. App.

17   4th 479, 492 (2009) (affirming trial court's order sustaining demurrer to negligence

18   claim based on lack of a legally cognizable duty).[2]

19         1.   Plaintiffs' Claims Are Based on Google's Alleged Nonfeasance

20       Plaintiffs' negligence claim against Google is premised on a fraudulent scheme

21   perpetrated by third parties: the Fraudulent Actors.  That is important because

22   "[w]hen analyzing duty in the context of third party acts, courts distinguish between

23   'misfeasance' and 'nonfeasance.' *Melton v. Boustred*, 183 Cal. App. 4th 521, 531

24   (2010).  "Misfeasance exists when the defendant is responsible for making the

---

[2] While the Complaint labels the claim one for "professional negligence," the California Supreme Court has held that, "with respect to questions of substantive law," professional negligence and negligence claims "comprise essentially one form of action."  *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 995 (1994).

1   plaintiff's position worse, i.e., defendant has *created* a risk. Conversely, nonfeasance

2   is found when the defendant has failed to aid plaintiff through beneficial

3   intervention.'" *Id.* at 531 (emphasis added; internal citations and quotation marks

4   omitted). That distinction is significant legally. Claims premised on a defendant's

5   misfeasance require a Court to weigh various factors in determining whether a

6   cognizable legal duty should exist under the circumstances. *See Conti v. Watchtower*

7   *Bible & Tract Soc'y of New York, Inc.*, 235 Cal. App. 4th 1214, 1226–28 (2015);

8   *Melton*, 183 Cal. App. 4th at 531-32. By contrast, claims premised on a defendant's

9   nonfeasance are treated differently because a party "'is ordinarily not liable for the

10  actions of another and is under no duty to protect another from harm, in the absence

11  of a special relationship of custody or control.'" *Burns*, 173 Cal. App. 4th at 487

12  (quoting *Nally v. Grace Community Church*, 47 Cal.3d 278, 293 (1988)); *accord*

13  *Melton*, 183 Cal. App. 4th at 531 ("as a general matter, there is no duty to act to

14  protect others from the conduct of third parties" (internal quotation marks omitted).

15          Here, Plaintiffs' negligence claim against Google is premised on Google's

16  alleged nonfeasance. Google issues gift cards that individuals may purchase from

17  retail establishments and then use as they see fit to purchase items such as apps,

18  games, movies, music and books from the Google Play store. Google Play gift cards

19  are not an inherently dangerous product such as poison or explosives. *See also*

20  *Bojorquez v. House of Toys, Inc.*, 62 Cal. App. 3d 930 (1976) (rejecting negligence

21  claim based on alleged failure to warn of dangers brought against retailer who sold

22  slingshots to children). The gift cards simply perform a neutral, currency-like

23  function for the Google Play store. Accordingly, Google did not engage in

24  misfeasance because it did not "create[] a 'peril'" by "engag[ing] in any active

25  conduct that increased the risk of harm to plaintiffs" beyond that which Plaintiffs

26  already faced because of the Fraudulent Actors' extortionate scheme. *Melton*, 183

27  Cal. App. 4th at 533. Even if Google Play gift cards did not exist, Plaintiffs could

28  still have been extorted and convinced to provide the Fraudulent Actors with $10,000

in cash, bank wires, non-Google Play gift cards, gold coins, or any number of other means of transmitting value.

*Melton* is instructive.  There, the Court of Appeal rejected the plaintiffs' argument that the conduct of the defendant – who had broadly advertised on MySpace and then hosted a raucous, alcohol-fueled party at which plaintiffs were stabbed by other partygoers – should be considered misfeasance.  183 Cal. App. 4th at 533.  The court held that the defendant's conduct "did not create the peril that harmed plaintiffs"; instead, it was the conduct of those who assaulted the plaintiffs who created the peril.  *Id.  Melton* reasoned that the violent conduct of the third parties who had stabbed the plaintiffs at defendant's party "was not a necessary component of defendant's MySpace party" and "defendant took no action to stimulate the criminal conduct" and "did not engage in active conduct that increased the risk of harm to plaintiffs."  *Id.*[3]

Here, Google is even further removed from the alleged misconduct than in *Melton*.  Use in an extortionate scam is not a "necessary component" of Google Play gift cards.  *Id.*  The gift cards can be used by their purchaser however he or she sees fit.  In addition, Google "took no action to stimulate the criminal conduct" and did not increase the risk of harm to Plaintiffs.  *Id.*  Google simply made the gift cards available for purchase.  Accordingly, Plaintiffs' claims against Google are based on nonfeasance and "thus fall[] under the general rule that ***absent a special relationship***, an actor is under no duty to control the conduct of third parties" and, without such a special relationship, "there is no basis for imposing a legal duty on him to prevent the

---

[3] *Melton* relied on a prior case, *Sakiyama v. AMF Bowling Centers, Inc.*, 110 Cal. App. 4th 398 (2003).  In *Sakiyama*, the court rejected negligence claims against an event host brought by families of teenagers who had taken drugs at the event and then died in a car crash after leaving the event.  The court reasoned that "even if [defendant] knew or could assume that drugs would be used by some of the attendees … the teenagers did not need to use drugs to attend the party" and "attendees were not required to stay until they were too tired to drive home."  *Id.* at 402, 408.

1   harm inflicted by unknown third persons." *Id* (emphasis added; internal citations and

2   quotation marks omitted).[4]

3                  2.   Plaintiffs' Claims Fails Because They Do Not Allege A Special

4                       Relationship Creating A Duty Owed By Google

5         Here, Plaintiffs do not – and cannot – demonstrate a special relationship

6   between themselves and Google that could give rise to a cognizable legal duty.

7   "Typically, in special relationships, the plaintiff is particularly vulnerable and

8   dependent upon the defendant who, correspondingly, has some control over the

9   plaintiff's welfare." *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 893 (2014); *see*

10  *also Smith v. Freund*, 192 Cal. App. 4th 466, 473 (2011) ("A basic requisite of a duty

11  based on a special relationship is the defendant's ability to control the other person's

12  conduct"); *Burns*, 173 Cal. App. 4th at 487 (a "special relationship of custody or

13  control" is required).

14        The Complaint fails to allege any special relationship of custody or control that

15  existed between Google and Plaintiffs or Google and the Fraudulent Actors.  Rather,

16  Plaintiffs were simply ordinary consumers and, once they purchased the Google Play

17  gift cards, Google did not have the "ability to control [Plaintiffs'] conduct."  *Smith*,

18  192 Cal. App. 4th at 473.  Instead, Plaintiffs could – and did – choose to send the gift

19  cards to the Fraudulent Actors.  As a result, Plaintiffs' negligence claim against

20  Google fails as a matter of law and should be dismissed without leave to amend.  *See*

21

22        [4] *Accord McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233, at *4 (N.D.
    Cal. Dec. 5, 2003) (where plaintiff did "not allege that defendants caused the peril to
23  his ship; rather, plaintiff alleges that defendants failed to protect his ship from
    sinking," the alleged negligence "involves nonfeasance, rather than misfeasance" and
24  there was no "affirmative duty for defendants to rescue plaintiff's ship absent a
    special relationship between the parties") (citing *Williams v. State of California*, 34
25  Cal.3d 18 (1983)); *see also Gaylor v. Morin*, 2018 WL 6133405, at *9 (C.D. Cal. Jan.
    3, 2018); 6 Witkin, Summary 11th Torts § 1177 (2019) ("A person who has not
26  created a peril is ordinarily not liable in tort merely for failure to take affirmative
    action to assist or protect another, no matter how great the danger in which the other
27  is placed, or how easily he or she could be rescued, unless there is some relationship
    between them that gives rise to a duty to act").

28

*Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 235 Cal. App. 4th 1214, 1227–28 (2015) (noting numerous cases "have held that, where the issue is whether the defendant had a duty to protect the plaintiff from harm caused by a third party, the absence of a special relationship is dispositive and there is no reason to conduct the analysis prescribed in *Rowland v. Christian* (1968) 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (*Rowland* ), to determine whether a duty nevertheless existed").

### 3.  The *Rowland* Factors Further Underscore That Google Does Not Owe Plaintiffs A Cognizable Legal Duty

Because Plaintiffs' claim against Google is for nonfeasance and no special relationship exists, that conclusively precludes the existence of a cognizable legal duty.  *See Conti*, 235 Cal. App. 4th at 1227-28; *see also Melton*, 183 Cal. App. 4th at 536 ("given defendant's nonfeasance and the absence of a special relationship, defendant had no legal duty to protect plaintiffs from the third party criminal conduct that harmed them").  Nonetheless, some courts, including *Conti* and *Melton*, have also looked to the "*Rowland* factors" – utilized generally to determine whether a duty of care exists in cases of alleged *mis*feasance – to further support the conclusion that no legal duty exists in cases of alleged nonfeasance where no special relationship exists.  *Melton*, 183 Cal. App. 4th at 536 (explaining that the Court's conclusion that no legal duty existed was "strengthened by assessing the foreseeability of the risk, the burden of preventing the harm, and the other *Rowland* factors"); *accord Conti*, 235 Cal. App. 4th at 1228.

The *Rowland* factors are: (1) "the foreseeability of harm to the plaintiff,  [(2)] the degree of certainty that the plaintiff suffered injury, [(3)] the closeness of the connection between the defendant's conduct and the injury suffered, [(4)] the moral blame attached to the defendant's conduct, [(5)] the policy of preventing future harm, [(6)] the extent of the burden to the defendant and [(7)] consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [(8)] the availability, cost, and prevalence of insurance for the risk involved."

*Melton*, 183 Cal. App. at 530 (quoting *Rowland*, 69 Cal. 2d at 113).

In *Burns*, the court applied the *Rowland* factors and affirmed dismissal of a negligence claim at the pleadings stage in a case that also involved a plaintiff trying to sue a defendant for having failed to prevent a third-party from perpetrating a fraudulent scheme.  173 Cal. App. 4th at 488-92.  The plaintiff's employee had fraudulently used plaintiff's checks to pay down a credit card account the employee had used to buy goods at defendant Neiman Marcus's store.  *Id.* at 482.  The plaintiff sued Neiman Marcus for negligence alleging that the retailer owed plaintiff a duty to inquire before accepting the checks and thereby prevent the fraud.  *Id.* at 489.  The Court rejected plaintiff's claim and held that no cognizable legal duty existed.  *Id.*

Notwithstanding the plaintiff's allegations that the employee's conduct raised numerous "red flags" ignored by Neiman Marcus – including the employee's purchase of over $1 million in goods over a five-year period despite having a stated annual income of no more than $75,000 – the Court of Appeal found that "[t]he foreseeability of harm to plaintiff, the degree of certainty that plaintiff would suffer harm, and the connection between Neiman Marcus's conduct and the injury plaintiff suffered, all weigh in favor of not imposing a duty on the retail merchant in this case."  *Id.*  The court also found that the other *Rowland* factors further supported the conclusion that Neiman Marcus did not owe the plaintiff a legal duty to prevent the fraud.  *Id.* at 489-90.  The court noted the burden that would result on defendant and other merchants, and especially emphasized that "the person deserving of moral blame is [the employee-fraudster], not Neiman Marcus," as "[t]here is no allegation that Neiman Marcus actively participated in [the employee's] alleged embezzlement of funds from plaintiff."  *Id.* at 490.

The case for imposing a duty of care on Google here is even less compelling than in *Burns*.  Google's alleged failure to warn Plaintiffs that Google Play gift cards could conceivably be used in a criminal scheme does not make such an outcome

GOOGLE'S 12(b)(6) MOTION TO DISMISS

"foreseeable" for Google Play gift card purchasers generally.[5]  This is particularly true because, "in the case of *criminal* conduct by a third party," "an extraordinarily high degree of foreseeability is required to impose a duty on" another defendant. *Melton*, 183 Cal. App. 4th at 536 (original emphasis).  Such extraordinarily high degree of foreseeability is not present here.  To the contrary, anything of value – whether a gift card, cash, gold coins, etc. – can be used by third parties as part of a criminal scheme.  There is nothing inherently dangerous about Google Play gift cards.

Just as the United States Treasury is not liable to Plaintiffs because it printed the $150,000 in cash that Plaintiffs sent to the Fraudulent Actors, Google is not liable for selling gift cards that Plaintiffs chose to send to the Fraudulent Actors in lieu of cash.  And just as generalized warnings from the U.S. Treasury that cash can be used for nefarious purposes would do little or nothing to prevent illicit schemes, Plaintiffs' claims that Google should have "warned" users that gift cards can be used as part of fraudulent scams would similarly lack efficacy.[6]  Someone who sends a third party something of value – be it a gift card, cash, gold, etc. – *already knows* that he or she will be harmed if that third party is perpetrating a fraud.  Finally, as in *Burns* with respect to Neiman Marcus, Google was not – even under Plaintiffs' allegations – a

---

[5] *See id.* at 488 (for *Rowland* factor analysis related to whether a duty of care exists, foreseeability is measured by "evaluating more generally whether the category of negligent conduct is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed" rather than focusing on "a *particular* plaintiff's injury," which may be atypical) (original emphasis).

[6] *See Thompson v. Cty. of Alameda*, 27 Cal. 3d 741, 754–55 (1980) (rejecting claim that County owed duty to warn about release of violent criminal from prison and explaining that "we foresee significant practical obstacles in the imposition of a duty in the form that plaintiffs seek, concluding that it would be unwieldy and of little practical value. As previously indicated a large number of persons are released and supervised on probation and parole each year in this state. Notification to the public at large of the release of each offender who has a history of violence and who has made a generalized threat at some time during incarceration or while under supervision would, in our view, produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public.").

1    party to the Fraudulent Actors' scheme and is thus morally blameless.  The blame lies

2    with the Fraudulent Actors, against whom Plaintiffs have alleged claims, not Google.

3         Accordingly, even if the claims against Google involved misfeasance and the

4    *Rowland* factors applied, they would only underscore that no legal duty is owed by

5    Google to Plaintiffs, and Plaintiffs' negligence claim fails as a matter of law.

6    **B. Plaintiffs Fail To Plausibly Allege That Google Actually Or**

7    **Proximately Caused Their Claimed Damages**

8         Plaintiffs' negligence claim also fails because they fail to plausibly allege that

9    Google caused their claimed harm.  *See Patrick v. Alacer Corp.*, 167 Cal. App. 4th

10   995, 1017-18 (2008) (affirming an order sustaining a demurrer without leave to

11   amend where "Plaintiff has not and cannot allege a causal connection between the

12   [defendants' actions] and her damages"); *see also Iqbal*, 556 U.S. at 678-679.  To the

13   contrary, the Complaint makes clear that what caused Plaintiffs to purchase $10,000

14   in Google Play gift cards and share them with the Fraudulent Actors was the

15   Fraudulent Actors' duplicitous scheme, not anything inherent in the Google Play gift

16   cards.  Google is no more responsible for the $10,000 loss than an ATM operator

17   would be if Plaintiffs had withdrawn $10,000 in cash from an ATM machine and then

18   mailed it to Plaintiffs.  Plaintiffs' course of conduct demonstrates that – even if

19   Google Play gift cards did not exist – they would still have been defrauded.  The

20   Fraudulent Actors could simply have instructed Plaintiffs to transmit the $10,000

21   through one of the other mechanisms that Plaintiffs used to transfer significantly

22   larger sums to the Fraudulent Actors, i.e., wire transfers, cash, or gift cards from other

23   vendors.

24        Case law demonstrates that the criminal acts of a third party are a superseding

25   cause that preclude liability against other defendants in situations similar to that of

26   Google here.  For example, in *Angelis v. Foster*, 24 Cal. App. 2d 541, 543 (1938), the

27   court affirmed the trial court's dismissal on demurrer of a negligence claim based on

28   the defendant school district's failure to provide transportation home to a student

struck by a drunk driver.  The court held that the drunk driver's conduct was a superseding cause while the school district's connection was "remote and not a proximate cause of the plaintiff's injury."  *Id.*; *accord King v. United States*, 756 F. Supp. 1357, 1361 (E.D. Cal. 1990) (citing *Angelis* for proposition that "[c]ourts have long held that when, after a defendant's conduct occurs, an independent intervening act operates to produce injury, the chain of causation may be broken" and holding that plaintiff failed as a matter of law to demonstrate that defendant proximately caused the alleged injuries); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) ("we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" because "[w]hile the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them"); *see also Premo v. Grigg*, 237 Cal. App. 2d 192, 197 (1965) (noting courts' "virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths").

### C. The Economic Loss Doctrine Further Bars Plaintiffs' Claim

Plaintiffs' claim is also barred by the economic loss doctrine.  "Under the economic loss rule, purely economic losses are not recoverable in tort."  *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *4 (C.D. Cal. Oct. 1, 2018) (internal quotation marks omitted); *see also Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 59 (1998) (under the economic loss doctrine, "a business entity has no duty to prevent financial loss to others").  "[E]conomic loss alone, without physical injury, does not amount to the type of damage that will cause a negligence or strict liability cause of action to accrue.  In a strict liability or negligence case, the

compensable injury must be physical harm to persons or property, not mere economic loss." *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) (internal quotation marks omitted); *see also S. California Gas Leak Cases*, 7 Cal. 5th 391, 414 (2019) (citing then-Judge Cardozo for proposition that "permitting recovery in negligence for purely economic losses can threaten indeterminacy-cubed: liability in an indeterminate amount for an indeterminate time to an indeterminate class").

Here, Plaintiffs' Complaint makes clear that their alleged harm with regard to the $10,000 in Google Play gift cards is an economic loss, not physical or property injury. Cmplt. ¶ 26. Accordingly, the economic loss doctrine bars their claim. *See*, *e.g.*, *McMillan v. Connected Corp.*, 2011 WL 13213945, at *9 (C.D. Cal. May 18, 2011) (granting motion to dismiss negligence claim based on the economic loss rule).

## V.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM AGAINST GOOGLE FAILS AS A MATTER OF LAW

### A. Plaintiffs Fail To Allege A Valid Basis For The Existence Of Any Cognizable Fiduciary Duties Owed By Google

In ruling on claims for "breach of fiduciary duty…, the existence of legal duty in the first instance and its scope are questions of law." *Kirschner Bros. Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790 (1986); *accord Hall v. Superior Court*, 108 Cal. App. 4th 706, 711 (2003). Thus, a breach of fiduciary duty claim may be dismissed at the pleading stage if it fails to set forth a valid basis for the existence of fiduciary duties. *E.g.*, *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 (2009) (holding that "[b]ecause the allegations of the complaint do not establish that defendants had a fiduciary duty to [plaintiff], the trial court correctly sustained, without leave to amend, the demurrer to [plaintiff's] cause of action for breach of fiduciary duty").

Here, Plaintiffs fail to allege a valid basis for the existence of any fiduciary duties owed by Google to them. Instead, their breach of fiduciary duty claim simply recycles the allegations from their negligence claim against Google. *Compare* Cmplt. ¶¶ 50-52 *with id.* ¶¶ 61-62. As explained above, those allegations fail to provide a

viable basis even for a negligence claim – let alone a viable basis for concluding that the relationship between Plaintiffs and Google is sufficiently special and marked by trust to create fiduciary duties.  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 385–86 (2008) (quoting *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 221 (1983)).  "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."  *Wolf v. Superior Court*, 107 Cal.App.4th 25, 30 (2003).

Plaintiffs' Complaint does not allege that Google knowingly agreed to "subordinate its interests to those of" Plaintiffs and to act on their behalf and for their benefit.  *City of Hope*, 43 Cal. 4th at 386.  Nor does the Complaint allege that Plaintiffs and Google have the sort of relationship that creates fiduciary duties as a matter of law.  *Wolf*, 107 Cal.App.4th at 30.  Instead, the Complaint merely alleges that Google issues a product (gift cards) that Plaintiffs purchased and then shared with the Fraudulent Actors.  Courts have routinely rejected arguments that such customer-retailer relationships can give rise to fiduciary duties.  *E.g.*, *Committee on Children's Television*, 35 Cal.3d at 221-22 (holding no fiduciary relationship existed between commercial sellers and purchasers of breakfast cereals despite allegations that sellers had superior bargaining power and knowledge and exploited their position of trust in the marketplace); *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 961 (2005) (no fiduciary relationship between jeweler and its customers); *see also Marshall v. Galvanoni*, 2017 WL 5177764, at *7 (E.D. Cal. Nov. 8, 2017) (a "creditor-debtor relationship … gives rise to no automatic fiduciary obligations").

1      **B. Plaintiffs' Fiduciary Duty Claim Also Fails Because The Complaint**

2           **Does Not Plausibly Allege Google Actually Or Proximately Caused The**

3           **Claimed Damages And The Economic Loss Doctrine Bars The Claim**

4      For the same reasons set forth above in Sections IV(B) & (C) with respect to

5 Plaintiffs' negligence claim, Plaintiffs' breach of fiduciary duty claim is similarly

6 barred.  The Complaint fails to plausibly allege that Google caused their injuries,

7 and the economic loss doctrine precludes imposition of tort liability for the purely

8 economic $10,000 loss for which Plaintiffs seek to hold Google liable.

9 **VI.   CONCLUSION**

10      Because Plaintiffs claims against Google fail as a matter of law, they should

11 be dismissed without leave to amend.  Quite simply, Google does not belong in

12 this lawsuit.

13  Dated:  August 23, 2019           JASSY VICK CAROLAN LLP

14                           By:    */s/ Kevin L. Vick*

15                           Kevin L. Vick

16                           Attorneys for Defendant
                              GOOGLE LLC

17

18

19

20

21

22

23

24

25

26

27

28