1   **JASSY VICK CAROLAN LLP**
    KEVIN L. VICK, Cal. Bar No. 220738
2     kvick@jassyvick.com
    JEAN-PAUL JASSY, Cal. Bar No. 205513
3     jpjassy@jassyvick.com
    800 Wilshire Boulevard, Suite 800
4   Los Angeles, California 90017
    Telephone: 310-870-7048
5   Facsimile: 310-870-7010

6   Attorneys for Defendant
    GOOGLE LLC
7

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                         WESTERN DIVISION

12

13  GIRIBALA PATEL and SAJAN          Case No. 8:19-CV-01539-DOC-KES
    PATEL,

14                                    Honorable David O. Carter
              Plaintiffs,
15                                    **DEFENDANT GOOGLE LLC'S
        vs.                           REPLY IN SUPPORT OF ITS
16                                    MOTION TO DISMISS COMPLAINT
    CITIBANK CORPORATION, a New       PURSUANT TO FEDERAL RULE OF
17  York Corporation; BANK OF         CIVIL PROCEDURE 12(b)(6)**
    AMERICA, a North Carolina
    Corporation; JP MORGAN CHASE &
18  CORPORATION, New York
    Corporation; REGIONS FINANCIAL
19  CORPORATION, an Alabama
    Corporation; APPLE, INC., a       Date:       September 30, 2019
20  California Corporation; GOOGLE,   Time:       8:30 a.m.
    LLC, a California Limited Liability   Courtroom:  9D
21  Company; FEDEX CORPORATION,
    a Tennessee Corporation; LYNDA
22  KATHLYN COMADURAN, an
    Individual; SUBHANKAR BOSE, an
23  Individual; and DOES 1 through 100,
    inclusive,
24            Defendants.

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     PLAINTIFFS IGNORE CONTROLLING LAW BARRING THEIR
        NEGLIGENCE CLAIM BECAUSE THERE IS NO SPECIAL
        RELATIONSHIP GIVING RISE TO A DUTY OWED BY GOOGLE ......... 1

III.    PLAINTIFFS' OPPOSITION RELIES ON INAPPOSITE CASELAW
        THAT ONLY UNDERSCORES WHY THEIR NEGLIGENCE CLAIM
        FAILS AS A MATTER OF LAW FOR LACK OF A LEGAL DUTY .......... 2

        A.      Plaintiffs' Claim Against Google Is Based On Nonfeasance, But Their
                Opposition Relies On Inapposite Cases Addressing Misfeasance ........ 2

        B.      The Cases That Plaintiffs Rely On Fail To Support Their Claim Against
                Google For Additional Reasons ............................................................ 3

        C.      Courts Have Consistently Refused To Recognize A Legal Duty Even In
                Cases With Far More Compelling Circumstances Than Here ............... 6

IV.     PLAINTIFFS' OPPOSITION FAILS TO ADDRESS ADDITIONAL
        LEGAL DEFECTS IN THEIR NEGLIGENCE CLAIM ............................. 10

V.      THE OPPOSITION FAILS TO ADDRESS MULTIPLE LEGAL
        DEFECTS IN PLAINTIFFS' BREACH OF FIDUCIARY DUTY
        CLAIM .................................................................................................... 11

VI.     CONCLUSION ......................................................................................... 12

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Burns v. Neiman Marcus Grp., Inc.*,
    173 Cal. App. 4th 479 (2009).................................................................5, 6, 9

*Chazen v. Centennial Bank*,
    61 Cal. App. 4th 532 (1998)...............................................................................4

*Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*,
    235 Cal. App. 4th 1214 (2015)..........................................................................2

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989) ..........................................................................................2

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007)..........................................................................3

*Federal Deposit Ins. Corp. v. McSweeney*,
    772 F. Supp. 1154 (S.D. Cal. 1991) ...............................................................11

*Gil v. Bank of Am., N.A.*,
    138 Cal. App. 4th 1371 (2006).......................................................................4, 5

*Gilman v. Dalby*,
    176 Cal. App. 4th 606 (2009)..........................................................................10

*Joffe v. United California Bank*,
    141 Cal. App. 3d 541 (1983).....................................................................3, 4, 5

*Karen Kane, Inc. v. Bank of Am.*,
    67 Cal. App. 4th 1192 (1998)..................................................................6, 7, 8, 9

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010)......................................................................1, 2, 6

*Minch v. Dep't of California Highway Patrol*,
    140 Cal. App. 4th 485 (2006)............................................................................2

*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.*,
    110 Cal. App. 4th 120 (2003)..........................................................................11

*QDOS, Inc. v. Signature Fin., LLC*,
    17 Cal. App. 5th 1001 (2017)...................................................................8, 9, 10

*Rodriguez v. Bank of the W.*,
    162 Cal. App. 4th 464 (2008)............................................................................8

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS

*Rowland v. Christian,*
  69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) ...................................... 2

*Roy Supply, Inc. v. Wells Fargo Bank,*
  39 Cal. App. 4th 1051 (1995) ............................................................................ 3

*Salahutdin v. Valley of California, Inc.,*
  24 Cal. App. 4th 555 (1994) ............................................................................ 11

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,*
  49 Cal. App. 4th 472 (1996) .............................................................................. 9

*Sun 'n Sand, Inc. v. United California Bank,*
  21 Cal. 3d 671 (1978) ........................................................... 2, 3, 4, 5, 6, 8, 9

*Thompson v. Cty. of Alameda,*
  27 Cal. 3d 741 (1980) ...................................................................................... 10

*Tribeca Companies, LLC v. First Am. Title Ins. Co.,*
  239 Cal. App. 4th 1088 (2015) ........................................................................ 11

STATE STATUTES

Civil Code § 1714(a) ............................................................................................... 9

OTHER AUTHORITIES

9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 808 ........................................... 3

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiffs' Opposition fails to address numerous grounds set forth in Google's moving papers justifying dismissal of Plaintiff's Complaint.  For example, Google provided controlling authorities holding that a negligence claim necessarily fails as a matter of law where, as here, Plaintiffs are suing based on a defendant's nonfeasance but cannot show a special relationship between the parties.  Plaintiffs' Opposition never addresses the special relationship requirement, let alone provides legal authority supporting the existence of one here.  Similarly, Google's moving papers pointed out that Plaintiffs' breach of fiduciary duty claim failed because they could not allege a basis for the existence of fiduciary duties owed by Google.  Plaintiffs' Opposition simply ignores that necessary element.  Besides failing to address these core issues of duty, Plaintiffs' Opposition also ignores additional, independent grounds for dismissal set forth in Google's moving papers: Plaintiffs' failure to adequately allege the element of proximate causation, and the economic loss doctrine.

Even when Plaintiffs *do* respond to certain arguments and authorities set forth in Google's moving papers, they fail to provide this Court with any reason to deny Google's Motion.  Nor do they provide any basis for allowing them leave to amend.  To the contrary, Plaintiffs' Opposition only confirms that each of their claims against Google is not just inadequately pleaded, but suffers from incurable legal defects.  Google's Motion should be granted without leave to amend.

### II.   PLAINTIFFS IGNORE CONTROLLING LAW BARRING THEIR NEGLIGENCE CLAIM BECAUSE THERE IS NO SPECIAL RELATIONSHIP GIVING RISE TO A DUTY OWED BY GOOGLE

Google's moving papers set forth controlling case law holding that, in cases like this of alleged nonfeasance, "absent a special relationship, an actor is under no duty to control the conduct of third parties" and, without such a special relationship, "there is no basis for imposing a legal duty on him to prevent the harm inflicted by unknown third persons."  *Melton v. Boustred*, 183 Cal. App. 4th 521, 533 (2010); *see also*

1

1    Mot. at 4:19-8:6.  Plaintiffs do not dispute that their negligence claim is based on

2    nonfeasance by Google, as their alleged harm was admittedly caused by a scheme

3    perpetrated by the "Fraudulent Actors," not Google.  Opp. at 1:10-2:19; *see also id.* at 4:12-

4    20.

5         As Google's moving papers explained, Plaintiffs' negligence claim fails as a matter

6    of law because Plaintiffs do not allege any basis for the existence of the requisite special

7    relationship.  Mot. at 7:3-8:6.  Plaintiffs' Opposition does not dispute that.  *See generally*

8    Opp. (no discussion of special relationship).  Because Plaintiffs fail to allege a special

9    relationship, their negligence claim necessarily fails.  *E.g.*, *Conti v. Watchtower Bible &*

10   *Tract Soc'y of New York, Inc.*, 235 Cal. App. 4th 1214, 1227–28 (2015) (numerous cases

11   "have held that, where the issue is whether the defendant had a duty to protect the plaintiff

12   from harm caused by a third party, the absence of a special relationship is dispositive and

13   there is no reason to conduct the analysis prescribed in *Rowland v. Christian* (1968) 69

14   Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (*Rowland*), to determine whether a duty

15   nevertheless existed"); *accord Melton*, 183 Cal. App. 4th at 536.  On this basis alone, the

16   Court should dismiss Plaintiffs' negligence claim against Google without leave to amend.[1]

17   **III.    PLAINTIFFS' OPPOSITION RELIES ON INAPPOSITE CASE LAW**

18   **        THAT ONLY UNDERSCORES WHY THEIR NEGLIGENCE CLAIM**

19   **        FAILS AS A MATTER OF LAW FOR LACK OF A LEGAL DUTY**

20   **        A. Plaintiffs' Claim Against Google Is Based On Nonfeasance, But Their**

21   **            Opposition Relies on Inapposite Cases Addressing Misfeasance**

22   _____

     [1] Although Plaintiffs allege that Google had received complaints about gift
23   cards being used in fraudulent schemes, Opp. at 2:14-16, their Opposition cites
     caselaw acknowledging that California **rejects** knowledge of third-party misconduct
24   as a valid basis for recognizing a special relationship in the context of nonfeasance
     claims – even where the defendant is a governmental actor whose job is to protect the
25   public.  Opp. at 4:17-20 (citing *Minch v. Dep't of California Highway Patrol*, 140
     Cal. App. 4th 485, 901-05 (2006), which discussed California Supreme Court
26   decisions finding that no special relationship existed between government law
     enforcement and ordinary citizens, and rejecting negligence claims based on
27   government actors' failure to protect ordinary citizens from known violent threats);
     *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)
28   (same), cited in Mot. at 12:8-13.

                                      2

1   Plaintiffs' Opposition relies almost entirely on two inapposite cases that

2   addressed negligence claims based on *mis*feasance—not *non*feasance.  *See* Opp. at

3   5:12-7:19 (citing *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671 (1978)

4   and *Joffe v. United California Bank*, 141 Cal. App. 3d 541 (1983)).  In *Sun 'n Sand*,

5   the court explained that "[t]he asserted wrong, therefore, is not that [defendant] failed

6   to intervene beneficially (nonfeasance) but rather that it affirmatively engaged in risk-

7   creating conduct (misfeasance)."  21 Cal. 3d at 693.  In *Joffe*, the plaintiff's

8   negligence claim was premised on the defendant's conduct that was nearly identical

9   to that of the defendant in *Sun 'n Sand*.  141 Cal. App. 3d at 548, 556 (defendant bank

10  alleged to have credited proceeds of check to a party to whom the check was not

11  made out, thereby causing plaintiff to lose $25,000).  Thus, in those cases, the courts

12  "need not consider whether a special relationship exist[ed]" between the plaintiffs

13  and the defendants, as the negligence claims were based on misfeasance, not

14  nonfeasance.  *Sun 'n Sand*, 21 Cal. 3d at 693.  Here, by contrast, Plaintiffs' claims are

15  based on an alleged failure to intervene (nonfeasance) and thus Plaintiffs were

16  required to demonstrate a special relationship.  *See supra*, Section II.  *Sun 'n Sand*

17  and *Joffe* are thus, on their face, inapplicable and provide no legal support for

18  Plaintiff's claim against Google.

19  **B. The Cases That Plaintiffs Rely On Fail To Support Their Claim**

20  **Against Google For Additional Reasons**

21  Moreover, even if Plaintiffs had alleged a valid basis for a special relationship

22  (they did not), *Sun 'n Sand* and *Joffe* would still not support the validity of their

23  negligence claim against Google.  As an initial matter, subsequent courts have noted

24  that "[t]he lead opinion in *Sun'n Sand* expressed the views of only two members of

25  the court and, as Witkin would say, that opinion 'is not a precedent at all.'" (9 Witkin,

26  Cal. Procedure (3d ed. 1985) Appeal, § 808, p. 789.)."  *Roy Supply, Inc. v. Wells*

27  *Fargo Bank*, 39 Cal. App. 4th 1051, 1068 (1995); *see also E-Fab, Inc. v.*

28  *Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1321 (2007) (citing *Roy Supply* and

3

1   stating: "We acknowledge the existence of authority questioning the precedential

2   value of *Sun 'n Sand*").

3          Furthermore, even assuming arguendo that *Sun 'n Sand* held precedential value

4   (despite indications to the contrary in subsequent cases like *Roy Supply*), its holding

5   is, as Plaintiff admits, "circumscribed." Opp. at 6:6.  It addressed very specific facts

6   arising in a very particular context that have no application here.  *Sun n' Sand* held

7   that the defendant **bank** owed a legal duty of care to the plaintiff company where a

8   company employee had "altered" company checks that were payable to the bank by

9   (1) "increasing the amount" of the checks; and (2) "[a]lthough [the bank] was the

10  named payee, it caused or permitted the proceeds of the checks to be deposited in a

11  personal account maintained by the embezzling employee at" the defendant bank.  *Id.*

12  at 678.  The court "agreed that an attempt by a third party to divert the proceeds of a

13  check drawn payable to the order of a bank to the benefit of one other than the drawer

14  or drawee suggests a possible misappropriation."  *Id.* at 694.  As a result, the court

15  "conclude[d] that Sun 'n Sand's allegations define circumstances sufficiently

16  suspicious that [the defendant bank] should have been alerted to the risk that Sun 'n

17  Sand's employee was perpetrating a fraud. By making reasonable inquiries, [the

18  defendant bank] could have discovered the fraudulent scheme and prevented its

19  success."  *Id.* at 694-95.  However, as the court explained, this "duty is ***narrowly***

20  ***circumscribed***: It is activated ***only*** when checks, not insignificant in amount, are

21  drawn payable to the order of a bank and are presented to the payee bank by a third

22  party seeking to negotiate the checks for his own benefit."  *Id.* at 694-95 (emphases

23  added); *see also Joffe*, 141 Cal. App. 3d at 555-56 (defendant bank owed a duty of

24  care where plaintiff alleged facts similar to *Sun 'n Sand*).

25         Subsequent courts have noted just how limited *Sun n' Sand* and *Joffe* are.  For

26  example, in *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 545 (1998), the Court

27  of Appeal explained that "*Sun 'n Sand* and its progeny have held banks to be subject

28  to a duty of care toward non-depositors only in narrow factual circumstances: each

4

1  case involved the bank's liability for allowing a person to deposit a check, payable to

2  someone else, into a personal account, under circumstances that should have alerted

3  the bank to the possibility of fraud." *Id.* at 545.  The court added that "[i]t is not clear

4  whether the decisions can be applied to other factual circumstances" because they

5  "appear, at least in part, to reflect policy applying specifically to the negotiation of a

6  check by person who is not the named payee." *Id.*  Other courts have similarly

7  recognized that *Sun n' Sand* is limited to a specific context (banks) and specific

8  circumstances (inexplicable blunders by banks who allowed fraudulent actors to

9  deposit and obtain the proceeds of checks that were not payable to them). *E.g., Gil v.*

10  *Bank of Am., N.A.*, 138 Cal. App. 4th 1371, 1379 (2006) (*Sun 'n Sand* "articulates the

11  one narrowly circumscribed situation under which a bank has a duty to a

12  nondepositor to investigate a banking situation," i.e., "when large checks, drawn

13  payable to the order of a bank are presented to the payee bank by a third party

14  seeking to negotiate the checks for his or her own benefit").  Tellingly, Plaintiffs fail

15  to cite any caselaw applying the duty of care recognized in *Sun n' Sand* outside of the

16  banking and fraudulent check context, and Google is unaware of any such cases.

17        In contrast to *Sun 'n Sand* and *Joffe*, the alleged fraud here does not involve a

18  third party altering a legal instrument in an obvious manner and then deceiving a

19  credulous defendant into wrongfully crediting the obviously fraudulent instrument to

20  the third party's benefit and the plaintiff's detriment.  To the contrary, Plaintiffs

21  admit that *they* provided the Fraudulent Actors with the Google Play gift cards and/or

22  the PIN numbers knowing that the Fraudulent Actors could then simply redeem them.

23  Compl. ¶¶ 25-26.  This presents an entirely different situation than in *Sun 'n Sand*

24  and *Joffe. See Sun 'n Sand*, 21 Cal. 3d at 696 ("The bank does not have to be

25  especially vigilant; its agent need only read what appears on the face of the check to

26  be warned that a fraud may be in progress" as "the bank is confronted with an

27  obvious irregularity" and thus the risk of harm to the injured party is self-evidently

28  foreseeable).

5

**C. Courts Have Consistently Refused To Recognize A Legal Duty Even In Cases With Far More Compelling Circumstances Than Here**

Other courts have consistently declined to recognize a legal duty even when presented with factual scenarios far more similar to *Sun 'n Sand* than here. For example, in *Burns v. Neiman Marcus Grp., Inc.*, 173 Cal. App. 4th 479, 486 (2009), the court ruled that it "will not extend the holding of *Sun n' Sand* and *Joffe* to the facts of this case," where a third party had written checks from her employer's account payable to Neiman Marcus for goods she purchased. The court stressed certain distinctions with *Sun 'n Sand*. First, in *Burns*, the defendant charged with negligence was a department store, not a bank. *Id.* at 483-84. Second, the court emphasized that "in *Sun 'n Sand,* there was no discernable reason for the bank's action in allowing checks, payable to the bank, to be deposited into the employee's personal account," whereas "[i]n this case, we are presented with Neiman Marcus's acceptance of third party checks, payable to Neiman Marcus, in satisfaction of a customer's legitimate debt to the store for the purchase of goods." *Id.* at 492. Based on those distinctions, the court held that "we shall not extend *Sun 'n Sand* beyond its specific facts, and accordingly, we reject plaintiff's invitation to impose a duty upon Neiman Marcus based upon *Sun 'n Sand.*" *Id.*

Here, Google's conduct is even farther removed from the third-party fraud than that of the defendant in *Burns*. In *Burns*, the fraudulent third-party forged plaintiff's checks and then used them to purchase goods from Neiman Marcus. Here, Google simply made its gift cards available for purchase, and Plaintiffs bought and then shared the cards with the Fraudulent Actors, who, as Plaintiffs knew, would then be able to redeem the cards. *See Karen Kane, Inc. v. Bank of Am.*, 67 Cal. App. 4th 1192, 1202 (1998) (dismissing negligence claim against bank and rejecting proposed duty of inquiry/fraud prevention because "the checks were paid to the payees selected by [the plaintiff]" and the plaintiff's "contention is not that the endorsements should

6

1   have indicated that there was something wrong with the checks or their negotiation,

2   but that there was something wrong with the payees selected by" the plaintiff itself).

3        While the Opposition asserts that "the harm that occurred to Plaintiffs was

4   foreseeable" because other people "have lost the money loaded into the gift cards,"

5   Opp. at 6:18-22, that misstates the proper analysis regarding foreseeability.  As the

6   Court of Appeal explained in *Melton*, "in the case of *criminal* conduct by a third

7   party," "an extraordinarily high degree of foreseeability is required to impose a duty

8   on" another defendant.  183 Cal. App. 4th at 536 (original emphasis).  Such an

9   extraordinarily high degree of foreseeability is not present here because ***anything*** of

10  value – whether a gift card, cash, gold coins, etc. – can by used by third parties as part

11  of a criminal scheme.  There is nothing inherently dangerous about Google Play gift

12  cards that makes their potential misuse "foreseeable."  Countless people purchase

13  Google Play gift cards for innocent and legitimate reasons every day.  Just as

14  Plaintiffs cannot hold the U.S. Treasury liable for printing the $150,000 that they

15  mailed to the Fraudulent Actors because the Treasury should have "foreseen" that

16  cash could be used in a fraudulent scheme, they cannot hold Google liable because

17  the Fraudulent Actors requested $10,000 in gift cards in lieu of more cash.

18  Moreover, while Plaintiffs assert that "Google failed to train their employees and

19  store personnel in educating and informing customers about the risks of losing their

20  hard-earned money to scammers," Opp. at 2:17-19; *see also id.* at 7:12-17, Exhibit D

21  to Plaintiff's ***own*** Complaint demonstrates that Plaintiff Patel bought the Google Play

22  gift cards at Ralph's, Albertson's and 7-Eleven stores.

23       Plaintiffs are equally misguided in arguing that "there was a high degree of

24  certainty that Plaintiffs would suffer this specific type of harm because when

25  Plaintiffs purchased an abnormal amount of money in gift cards it places Defendant

26  on notice that something wrong has occurred."  Opp. at 6:22-25.  Even in cases

27  addressing the specialized context of banks, courts have rejected similar "notice"

28  arguments premised on the "large amounts" of checks, even when, unlike here, they

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS

1    "bore unbusinesslike and unorthodox endorsements which departed from standard

2    business practice, and were negotiated for cash at a check cashing service." *Karen*

3    *Kane*, 67 Cal. App. 4th at 1197–98 (holding negligence claim against bank failed as a

4    matter of law); *see also QDOS, Inc. v. Signature Fin., LLC*, 17 Cal. App. 5th 990,

5    1001 (2017) (same); *Rodriguez v. Bank of the W.*, 162 Cal. App. 4th 454, 464–65

6    (2008) (same).  In *Karen Kane*, the court also emphasized that it is disingenuous for a

7    plaintiff to argue that a third-party fraud victimizing the plaintiff was "foreseeable" to

8    a defendant where plaintiff itself failed to foresee and detect the fraud despite having

9    the opportunity – and ample motivation – to do so.  67 Cal. App. 4th at 1197–98.  The

10   court reasoned that the plaintiff, "as the maker of the checks, had first-hand

11   knowledge" regarding them but "alleged that this knowledge did not enable it to

12   discover the scheme earlier than it did." *Id.*  The court concluded "[i]t is difficult to

13   see how the amount or frequency of the checks could constitute notice of possible

14   fraud to [defendants], but not to [plaintiff], the maker of the checks." *Id.*

15         *Karen Kane* is also instructive on another issue raised in the Opposition:  the

16   burden of the purported duty that Plaintiffs would impose on Google *and* all other

17   entities selling gift cards.  While Plaintiffs try to downplay the burden that would be

18   imposed if a duty to inquire/protect were recognized here, Opp. at 7:1-17, the reality

19   is far different.  As *Karen Kane* explained with respect to the proposed duty of

20   inquiry/fraud prevention rejected there, "a considerable burden would be imposed on

21   check cashing services, banks, and their customers if we were to find that those

22   institutions had to inquire into the activities of both the makers and payees of checks

23   regarding the possibility of internal fraud, and the flow of commerce would be

24   substantially impeded." 67 Cal. App. 4th at 1199.  The same is even more true of gift

25   cards.  If Plaintiffs' proposed duty were recognized, it is difficult to see how gift

26   cards could be offered for sale at all.  Gift card issuers – like the U.S. Treasury or

27   ATM machine operators with respect to cash – could never be sure that third-party

28   fraudulent actors will not utilize gift cards as part of a nefarious scheme.  Plaintiffs

8

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS

1  admit as much, as they urge "a duty of inquiry in this case Google should prevent the

2  commonly known crime by simply ***restricting the purchase of its gift cards***[.]"  Opp.

3  at 7:3-6 (emphasis added).  That is the same argument that the Court of Appeal

4  rejected in *Karen Kane*.  67 Cal. App. 4th at 1199.[2]  The court also emphasized that

5  imposition of such a burden was particularly unjustified where the plaintiff "had the

6  ability to police its own financial practices" and "to take steps to avoid being

7  victimized by" others.  *Id.* The court reasoned:  "It is that person who has the most

8  control and the most to win or lose ... with whom the investigative tasks should rest."

9  *Id.* (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49 Cal.

10  App. 4th 472, 483 (1996)); *see also QDOS*, 17 Cal. App. 5th at 1003 ("Indeed, the

11  statute governing the scope of duties of care specifically provides that no duty of care

12  will lie where the putative plaintiff 'has, willfully or by want of ordinary care,

13  brought the injury upon himself or herself.' (Civ. Code, § 1714, subd. (a)").

14       Relatedly, courts have been especially unwilling to recognize a legal duty to

15  investigate/protect/inform of risk where the plaintiff "suffered harm at the hands of" a

16  third party and "there is no moral blame attached to the [defendant's] behavior."

17  *Karen Kane*.  67 Cal. App. 4th at 1199; *accord Burns*, 173 Cal. App. 4th at 490.  And

18  they also have rejected imposition of a legal duty that is unlikely to "prevent future

19  harm" in light of the nature of the underlying fraudulent scheme that victimized the

20  plaintiff and the ability of "[s]coundrels who can defraud" to find a way to work-

21  around the proposed duty.  *Karen Kane*.  67 Cal. App. 4th at 1199.  Here, Plaintiffs'

22  course of conduct demonstrates that – even if Google Play gift cards did not exist –

23  Plaintiffs still would have been defrauded.  The Fraudulent Actors could simply have

24

25

26    [2] *See also QDOS,* 17 Cal. App. 5th at 1001–02 (same).  By contrast, the
narrowly circumscribed duty of inquiry recognized in *Sun 'n Sand* was accepted only

27  after the court was assured that "commerce" would not be "impeded by a duty of
inquiry" under the very narrow circumstances addressed there.  21 Cal. 3d at 696.

28

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS

1    instructed Plaintiffs to transmit the $10,000 through one of the other mechanisms

2    used to transfer significantly larger sums, i.e., wire transfers or cash.

3         Moreover, courts have cautioned that new duties of care should only be created

4    where such duties are "narrowly circumscribed" and the defendant's "obligation is

5    minimal" and clearly defined. *Sun 'n Sand*, 21 Cal. 3d at 695; *see also QDOS,* 17

6    Cal. App. 5th at 1003 ("*Sun 'n Sand* itself acknowledged that the duty it was

7    recognizing was "'narrowly circumscribed.'").  Here, Plaintiffs seek to impose a duty

8    on Google that, by Plaintiff's own admission, is not narrowly circumscribed, but far-

9    reaching and vaguely defined.  Opp. at 7:4-17 (suggesting that Google should comply

10   with its proposed duty by "restricting the purchase of its gift cards," "alerting the

11   authorities of such acts to guide its customers in finding the help they desperately are

12   in need of to prevent harm," "tak[ing] action to improve its practice of selling such

13   gift cards," "improv[ing] its procedures for protecting customers," "develop[ing]

14   ways to inform and educate customers of these mischievous methods," and

15   "train[ing] employees to limit such transactions or red flag such transactions").[3]

16   **IV.    PLAINTIFFS' OPPOSITION FAILS TO ADDRESS ADDITIONAL**

17   **LEGAL DEFECTS IN THEIR NEGLIGENCE CLAIM**

18        Google's moving papers set forth two additional and independent grounds for

19   dismissal of Plaintiff's negligence claim: (1) failure to plausibly allege that Google

20   proximately caused Plaintiffs' claimed damages; and (2) the economic loss doctrine.

21   Mot. at 11-13.  Plaintiffs' Opposition ignores those additional grounds.  Their failure

22

23        [3] *See also Thompson v. Cty. of Alameda*, 27 Cal. 3d 741, 754–55 (1980)
24   (rejecting claim County owed duty to warn about release of violent criminal from
     prison because "we foresee significant practical obstacles in the imposition of a duty
25   in the form that plaintiffs seek, concluding that it would be unwieldy and of little
     practical value. As previously indicated a large number of persons are released and
26   supervised on probation and parole each year in this state. Notification to the public
     at large of the release of each offender who has a history of violence and who has
27   made a generalized threat at some time during incarceration or while under
     supervision would, in our view, produce a cacaphony of warnings that by reason of
28   their sheer volume would add little to the effective protection of the public.").

1  to dispute them further justifies dismissal of Plaintiff's negligence claim without

2  leave to amend.

3  **V.  THE OPPOSITION FAILS TO ADDRESS MULTIPLE LEGAL**

4  **DEFECTS IN PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM**

5  Google's moving papers demonstrated that Plaintiff's breach of fiduciary duty

6  claim failed because Plaintiff failed to allege a basis for the existence of fiduciary

7  duties owed by Google.  Mot. at 13-14.  Plaintiffs' Opposition fails to address that

8  defect.  Instead, they simply repeat their argument regarding the purported existence

9  of a legal duty to support a *negligence* claim.  Opp. at 7-8.  But a breach of fiduciary

10 duty claim requires the existence of *fiduciary* duties, not just an ordinary duty of care

11 that might support a negligence claim.  *E.g.*, *Gilman v. Dalby*, 176 Cal. App. 4th 606,

12 615 (2009) (holding that "[b]ecause the allegations of the complaint do not establish

13 that defendants had a fiduciary duty to [plaintiff], the trial court correctly sustained,

14 without leave to amend, the demurrer to [plaintiff's] cause of action for breach

15 of fiduciary duty"); *see also Ostayan v. Nordhoff Townhomes Homeowners Assn.,*

16 *Inc.*, 110 Cal. App. 4th 120, 125 (2003) (a "fiduciary duty" is distinct from and is

17 "not [the same as] an independent duty arising under general negligence principles").

18 Plaintiffs' Opposition cites case law for the proposition that a breach of

19 fiduciary duty claim "can be based upon either negligence or fraud[.]"  Opp. at 7:26.

20 But the cases they cite make clear that is true with regard to the element of *breach*,

21 i.e., if – and only if – a defendant first owes a plaintiff a fiduciary duty, then either a

22 defendant's negligence or its fraud can constitute a breach of such duty.  *See* Opp. at

23 7:25-28, citing *Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th

24 1088, 1114, (2015) ("The *breach* of fiduciary duty can be based upon either

25 negligence or fraud, depending on the circumstances") (emphasis added); *Salahutdin*

26 *v. Valley of California, Inc.*, 24 Cal. App. 4th 555, 563 (1994) (same); *see also* Opp.

27 at 7:28-8:1 (citing *Federal Deposit Ins. Corp. v. McSweeney*, 772 F. Supp. 1154,

28 1157 (S.D. Cal. 1991), which explained that "defendants' attempt to characterize the

11

1   FDIC's claim for breach of fiduciary duty, as nothing more than a common

2   negligence claim, must fail" as the two are distinct causes of action).

3        Thus, Plaintiffs' breach of fiduciary duty claim should be dismissed without

4   leave to amend based on their inability to allege any basis for fiduciary duties owed

5   by Google.  In addition, as with their negligence claim, Plaintiffs' breach of fiduciary

6   duty claim also fails for two separate and independent reasons: (1) their failure to

7   plausibly allege that Google proximately caused Plaintiffs' claimed damages; and (2)

8   the economic loss doctrine.  *See supra*, Section IV; *see also* Mot. at 15.

9   **VI.   CONCLUSION**

10       For the foregoing reasons, Google's Motion to Dismiss the Complaint should

11  be granted without leave to amend, as Plaintiff's claims against Google are not just

12  inadequately pleaded, but suffer from incurable legal defects.

13   Dated:  September 16, 2019            JASSY VICK CAROLAN LLP

14                                         By:   */s/ Kevin L. Vick*
                                           Kevin L. Vick
15
                                           Attorneys for Defendant
16                                         GOOGLE LLC

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S REPLY IN SUPPORT OF 12(b)(6) MOTION
TO DISMISS